Jessica L. Hunter (ID No. 282432018)
J. Burkett McInturff*
**WITTELS MCINTURFF
PALIKOVIC**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jlh@wittelslaw.com
jbm@wittelslaw.com

D. Greg Blankinship*
Erin Kelley*
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Telephone: (914) 298-3281
gblankinship@fbfglaw.com
ekelley@fbfglaw.com

*Admitted Pro Hac Vice*

*Attorneys for Plaintiff Yitzchok Birnhack
and the Proposed Class*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YITZCHOK BIRNHACK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONSTELLATION NEWENERGY, INC.,<br><br>Defendant. | Civil Action No. 23-8337<br><br>**AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Yitzchok Birnhack ("Plaintiff"), by his attorneys, Wittels McInturff Palikovic and Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, brings this proposed class action in his individual capacity, and on behalf of a class of consumers defined below, against Defendant Constellation NewEnergy, Inc. (hereinafter "Constellation" or "Defendant"), and hereby alleges the following with knowledge as to his own acts, and upon information and belief as to all other acts:

## NATURE OF THE CASE

1.    This action seeks to redress Constellation's deceptive, bad faith, and unlawful pricing practices that have caused thousands of commercial and residential customers in New Jersey and other states to pay considerably more for their electricity and natural gas supply than they should otherwise have paid.

2.    In New Jersey and several other states, residential and commercial consumers can choose to purchase their gas and electricity supply from unregulated energy service companies ("ESCOs") like Constellation instead of from just their local utility.  This is a result of deregulation efforts in the 1990s to allow competition with utilities, the goal being to utilize market competition to reduce energy prices to end users.

3.    On the one hand, market pricing can create savings opportunities for customers as ESCOs who act in good faith reduce their rates when wholesale market prices go down.  On the other hand, unregulated energy pricing is subject to market volatility leading to price spikes any reasonable end user would want to avoid.

4.    Constellation exploits residential and commercial customers' desire to take advantage of falling prices in the market while at the same time having some protection against significant price increases.  It does so by misrepresenting that it offers a market variable rate product based on actual market pricing but with a cap on certain wholesale costs and its margins.

5.    To that end, Constellation promises in uniform customer contracts that it will set its electricity and natural gas at a variable rate based on two components: a usage charge based on the actual cost of wholesale electricity, as established by applicable wholesale market index prices for the customer's location (the "Usage Charge"), and a retail service charge composed of secondary energy-related charges Constellation incurs for participating in retail energy markets,

plus a reasonable margin (the "Retail Service Charge"). These secondary charges, as well as the profit margins Constellation tacks on to its procurement costs, are a substantial portion of the overall supply charges customers pay. To assuage customers' fears of price spikes, Constellation promises that it will cap the Retail Service Charge at a specified per therm or per kWh rate.

6.  The contract Constellation offered to Plaintiff, attached hereto as Exhibit A, is typical of this marketing strategy. Using its uniform customer contract (which did not become effective until after a prolonged recission period), Constellation promised it would set its variable rates based on the customer's "usage as provided by the Utility multiplied by the Real Time Locational Based Marginal Price for the zone in which your account is located as published by PJM Interconnection, L.L.C." plus a "retail service charge . . . [that] will not exceed $0.065 per kW/h." Ex. A at 1. Per Constellation's contract with Plaintiff, the Retail Service Charge encompasses "all energy related charges incurred by [Constellation] for serving [an] account during the applicable billing period, including, without limitation, congestion, capacity, transmission, line losses, ancillaries, renewable portfolio charges," as well as "a reasonable profit margin determined by [Constellation] from time to time in good faith." *Id.* Further, under the contract, the Retail Service Charge "***will not exceed*** $0.065 per kW/h." *Id.* (emphasis added).

7.  In reality, however, Constellation ignores the language of its contract and charges a rate that exceeds the rate that it should have charged based on the method dictated by its customer contract.

8.  Further, Constellation's contract violates several disclosure requirements mandated by New Jersey regulations. The regulations' purpose is to protect customers from an ESCO's price gouging and deceptive marketing, and they are designed to inform the customer, ahead of time, of the nature of the rates that will be charged and how they compare to rates charged by the local

utility—the ESCOs' biggest competitor.  Here, Constellation ran roughshod over applicable regulations and, as a result, was able to charge unwitting customers energy rates that were consistently higher than the rates charged by these customers' existing utilities.

9.     Constellation's overcharges were not mere happenstance, as Constellation's conduct is designed to take advantage of consumers' good faith and their lack of knowledge about, and access to, accurate wholesale and retail energy pricing information.

10.    Upon information and belief, many other Constellation customers in Connecticut, Delaware, Georgia, Illinois, Kentucky, Maryland, Michigan, Nebraska, New Jersey, Ohio, Pennsylvania, Virginia, Washington, D.C., and Wyoming were subject to Constellation's contractual variable rate provisions that set customer rates by reference to an index that is the same or equivalent to the index referenced in Plaintiff's contract with Constellation.

11.    Upon information and belief, Constellation's residential and commercial natural gas customers, as well as Constellation's commercial electricity customers in the same above-referenced states, were subject to the same or equivalent contractual pricing terms as Plaintiff.

12.    As a result of Constellation's unlawful acts described herein, thousands of unsuspecting consumers have been, and continue to be, harmed by Constellation's failure to abide by its contractual terms and other unlawful conduct.  Defendant's conduct, which often affects society's most vulnerable citizens, is immoral, unethical, oppressive, and unscrupulous.

13.    Plaintiff and the Class of other Constellation customers defined below (the "Class") have been injured by Defendant's unlawful practices.  Plaintiff and the Class therefore seek damages, restitution, statutory penalties, and declaratory and injunctive relief for Constellation's breach of contract, or, in the alternative, breach of the duty of good faith and fair dealing and/or unjust enrichment, as well as Constellation's violations of the New Jersey Consumer Fraud Act

and associated regulations, and violations of analogous consumer protection statutes in other states.

14.    Only through a class action can Constellation's customers remedy Defendant's ongoing wrongdoing.  Because the monetary damages suffered by each customer are small compared to the much higher cost a single customer would incur in trying to challenge Constellation's unlawful practices, it makes no financial sense for an individual customer to bring his or her own lawsuit.  Further, many customers do not realize they are victims of Constellation's deceptive and unlawful conduct.  With this class action, Plaintiff and the Class seek to level the playing field and make sure that companies like Constellation engage in fair and upright business practices.

## **PARTIES**

15.    Plaintiff resides in Lakewood, New Jersey.  In October 2010, Constellation enrolled Plaintiff in a fixed rate plan to supply Plaintiff's electricity.  In or around October 2012, Constellation began charging Plaintiff a variable rate for electricity.  Constellation charged Plaintiff variable rates that were higher than allowed pursuant to the contract's terms and higher than the rates charged by his local utility.  Plaintiff cancelled his Constellation account in or around September 2022.

16.    As a result of Defendant's deceptive and otherwise improper, unlawful, and unauthorized conduct, Plaintiff incurred excessive charges for electricity.

17.    Defendant Constellation NewEnergy, Inc., is a corporation incorporated in Delaware with its principal place of business at 1310 Point Street, 8th Floor, Baltimore, Maryland 21231.

18.     Constellation provides electricity and natural gas services to customers in Connecticut, Delaware, Georgia, Illinois, Kentucky, Maryland, Michigan, Nebraska, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Virginia, Washington, D.C., and Wyoming.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendant.

20.     The Court has specific personal jurisdiction over Defendant because Constellation maintains sufficient contacts in this jurisdiction, including the advertising, marketing, distribution, and sale of energy to Plaintiff and other New Jersey consumers.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the conduct alleged herein, including the marketing and sale of energy to Plaintiff, occurred in this district.

## FACTUAL ALLEGATIONS

### 1. The History of Deregulation and ESCOs' Role in Deregulated Markets

22.     Deregulation of energy markets occurred in many states in the 1990s.  For example, in 1999, New Jersey's legislature and the New Jersey Board of Public Utilities ("NJBPU") deregulated New Jersey's market for electricity and natural gas.  Among deregulation's goals was increased competition, with an eye towards achieving greater consumer choice and an overall reduction of energy rates.  As a result, the State's energy industry is open to competition, and consumers may choose their energy supplier.

Case 3:23-cv-08337-RK-JBD   Document 34   Filed 04/05/24   Page 7 of 67 PageID: 141


23.     The new energy suppliers, ESCOs, compete against local utilities such as Jersey Central Power & Light ("JCP&L").  While ESCOs supply the energy, the delivery of electricity and gas to homes and small businesses remains the job of the local utilities.

24.     The public policy motivation for allowing consumers a choice of energy suppliers is to enable retail customers to take advantage of competition between suppliers in the open market, as compared to the monopolistic and heavily regulated utility.  The premise behind this policy is that competition would result in ESCOs being more aggressive than the monopoly utility in reducing wholesale purchasing costs and would thereby lower prices for retail customers.

25.     Consumers in deregulated states like New Jersey who do not choose to switch to an ESCO for their energy supply continue to receive their supply from their local utility.

26.     ESCOs such as Constellation have various options to buy energy at wholesale for resale to retail customers, including: owning energy production facilities; purchasing energy from wholesale marketers and brokers at the price available at or near the time it is used by the retail consumer; and by purchasing energy in advance of the time it is used by consumers, either by purchasing physical energy to be used in the future or by purchasing futures contracts for the delivery of energy in the future at a predetermined price.  The purpose of deregulation is to allow ESCOs to use these and other innovative purchasing strategies to reduce energy costs and pass those savings on to consumers.

27.     Because of their increased flexibility, ESCOs can offer rates competitive with—if not substantially lower than—the utilities' rates, and some do.  Yet Constellation's variable rates are consistently and substantially higher than the local utility's; accordingly, no consumer would ever agree to Constellation's variable rate if they knew the truth.

28.     Consumers who do not choose to switch to an ESCO for their energy supply continue to receive their supply from their local utility.  However, if a customer switches to an ESCO, the customer will have his or her energy "supplied" by the ESCO, but still "delivered" by their existing utility.  The customer's existing utility also continues to bill the customer for both the energy supply and delivery costs.  The only difference to the customer is which company sets the price for the customer's energy supply.

29.     As part of the deregulation plan, ESCOs (like Constellation) do not have to file or seek approval for the electricity or natural gas rates they charge or the methods by which they set their rates with the NJBPU.

30.     Following deregulation, New Jersey enacted legislation to regulate interactions among ESCOs and consumers.  A major component of the legislative scheme is a series of regulations, N.J.A.C. 14:4-7.1 *et seq.* enacted in 2008.  Relevant to this case is the "Marketing Regulation" that applies to a "Third party supplier" or "TPS" of electricity or gas as defined in New Jersey's Electric Discount and Energy Competition Act ("EDECA").[1]  N.J.S.A. 14:4-1.2; N.J.A.C. 14:4-7.1.  Constellation is a TPS.

31.     The Marketing Regulation requires, *inter alia*, that for variable rate products, the TPS must provide "[t]he average price per kWh for electric generation service or the average price per therm for gas supply service being charged for basic generation service or basic gas supply service by the [utility] over the same period;" N.J.A.C. 14:4-7.4(a)(4), "[t]he estimated percentage savings on the total bill which a customer will realize under the advertised price relative to the

---

[1] Unless otherwise stated, all citations to the Marketing Regulation are to the original version enacted in 2008 and in effect in 2010.  The regulation was subsequently amended in 2014, 2016, and 2017 but remains the same in all relevant respects.

customer taking basic generation service or basic gas supply service from the [utility];" N.J.A.C. 14:4-7.4(b)(1), and "a detailed customer bill comparison," N.J.A.C. 14:4-7.4(b)(2).

### 2. Constellation's Contract Violates the Marketing Regulation

32.     Constellation's contract constitutes marketing under the Marketing Regulation because the contract is not binding on consumers during an extended rescission period.  Instead, New Jersey customers have fourteen days to rescind their contracts from the date they receive a confirmation notice of their choice of supplier.  N.J.A.C. 14:4-7.6(b)(4).  During this fourteen-day period, Constellation's contract served as a solicitation.  N.J.A.C. 14:4-7.4(a).

33.     Constellation's contract violates the Marketing Regulations in the following ways:

a.  Constellation's contract does not provide potential customers "the average price per kWh for electric generation service or the average price per therm for gas supply service being charged for basic generation service or basic gas supply service by the [relevant local utility] over the same period" as the contract's duration.  N.J.A.C. 14:4-7.4(a)(4).  In fact, Constellation's contract does not mention any local utility pricing whatsoever.

b.  For the period Plaintiff was on Constellation's fixed rate program, Constellation's contract failed to provide "the estimated percentage savings on the total bill which a customer will realize under the advertised price relative to the customer taking basic generation service or basic gas supply service from the [relevant local utility]."  N.J.A.C. 14:4-7.4(b)(1).  Again, Constellation's contract does not mention any local utility pricing whatsoever.

c.  For the period Plaintiff was on Constellation's variable rate program, Constellation failed to provide "a detailed customer bill comparison" as required by N.J.A.C. 14:4-7.4(b)(2).

d.  Constellation's contract does not point potential customers to a telephone number or website "which a customer may access to request detailed information concerning the average price per kWh for electric generation service or average price per therm for gas supply service over the term of a contract for the service being offered, exclusive of any charges for any optional services."  N.J.A.C. 14:4-7.4(a)(1).  Instead, Constellation's contract simply lists its address and telephone number

without any reference whatsoever regarding where a customer can access information about Constellation's average variable rates.

34.     By failing to provide the critical information required under the Marketing Regulation, Defendant was able to inflict the precise harm that Plaintiff suffered—being unknowingly overcharged for energy.

35.     Had Defendant provided the required information, Plaintiff would never have signed up with Constellation, nor would he have continued his enrollment after transitioning to a variable rate plan.  The same is true for all reasonable residential and commercial consumers.

### 3.  Plaintiff's Dealings with Constellation

36.     On October 30, 2010, Constellation enrolled Plaintiff in a 24-month fixed rate plan to supply Plaintiff electricity.

37.     Plaintiff does not have a copy of the original contract from 2010.  However, in 2012 Constellation claims it sent him a renewal notice with its uniform contract, informing Mr. Birnhack that if he did not sign up for a new fixed rate, he would be transferred to a variable rate.  That 2012 contract (attached as Exhibit A) contains the variable rate pricing term quoted herein to be utilized when the fixed rate expired (just like, upon information and belief, his 2010 contract provided).  It is standard practice in the industry for ESCOs to use the same variable rate pricing term year after year because they charge the same variable rate for many of their customers in a particular utility area irrespective of when they sign up for energy supply.  Notably, when Plaintiff complained about being overcharged by Constellation, it provided a copy of the 2012 contract in response.  On information and belief, the variable rate pricing terms in the 2010 and 2012 contracts, and subsequent Constellation contracts, are the same.

38.     Under Plaintiff's contract, following the 24-month fixed rate term, Constellation continued to supply energy to Plaintiff at a variable rate.

39.     On October 30, 2012, Constellation began charging Plaintiff a variable rate for electricity.

40.     Plaintiff cancelled his Constellation account in or around September 2022 when he realized that Constellation's rates were excessive.

41.     Constellation represented to Plaintiff in its form customer agreement that its variable rates for electricity would be "based on your usage as provided by the Utility multiplied by the Real Time Locational Based Marginal Price for the  zone in which your account is located as published by PJM Interconnection, L.L.C. . . . . averaged for all hours during the billings period" plus a "retail service charge" that includes "all energy related charges incurred by [Constellation] for serving [Plaintiff's] account during the applicable billing period, including, without limitation, congestion, capacity, transmission, line losses, ancillaries, renewable portfolio charges," as well as "a reasonable profit margin determined by [Constellation] from time to time in good faith." Constellation agreed that the Retail Service Charge "will not exceed $0.065 per kW/h."  Ex. A at 1.

42.     Upon information and belief, Plaintiff was subject to materially the same contractual terms for his variable energy rate as other residential and commercial electricity and natural gas Constellation customers in Connecticut, Delaware, Georgia, Illinois, Kentucky, Maryland, Michigan, Nebraska, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Virginia, Washington, D.C., and Wyoming.

43.     Because Constellation's contract explicitly ties its variable prices to the index published by PJM Interconnection, L.L.C ("PJM prices"), and  states that Retail Service Charge is capped at $0.065 per kW/h each month, it is possible to calculate what Constellation's variable rate should have been each month (because PJM prices and the costs for the specified energy

related charges are a matter of public record, albeit not in a form a non-expert customer can reasonably determine).

44.    Before filing this complaint Plaintiff commissioned an initial yet detailed analysis from a top-tier energy consulting expert regarding PJM prices.  This analysis (described below) demonstrates that Constellation frequently overcharged Plaintiff.  For example, over the six monthly billing periods preceding Plaintiff's cancellation of his Constellation account, Constellation violated the contract and overcharged Plaintiff in four months, as shown in the following table:

| Billing Period | Actual Rate Charged By Constellation(per kW/h) | Rate Plaintiff Should Have Been Charged (per kW/h)[2] | Overcharge (per kW/h) |
|---|---|---|---|
| 4/4/2022 – 5/3/2022 | $0.1234 | $0.1194 | $0.0040 |
| 5/4/2022 – 6/6/2022 | $0.1324 | $0.1285 | $0.0039 |
| 6/7/2022 – 7/6/2022 | $0.1347 | $0.1349 | - |
| 7/7/2022 – 8/5/2022 | $0.1551 | $0.1495 | $0.0056 |
| 8/6/2022 – 9/6/2022 | $0.1589 | $0.1624 | - |
| 9/7/2022 – 10/6/2022 | $0.1246 | $0.1184 | $0.0062 |

45.    Given that Defendant repeatedly breached its contract with Plaintiff in a way that has only become cognizable over time, the continuing violation doctrine applies, effectively tolling the limitations period until the date of Constellation's last wrongful act against Plaintiff, which was in October 2022, when Constellation last overcharged Plaintiff for electricity.  Moreover, Defendant's rate-setting calculations are non-public and are internal to Defendant.  As noted

---

[2] These rates are based on the consultant's estimate of the specific Locational Marginal Price ("LMP") zone in which Plaintiff's account is located.  However, the specific LMP zone Constellation used is information uniquely within Defendant's possession.

above, the reasonable diligence of a reasonable customer would not have unearthed Defendant's improper pricing practices without the input of an energy consulting expert regarding PJM prices.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action on his own behalf and, pursuant to Federal Rule of Civil Procedure 23(b) and (c)(4), on behalf of a class of Constellation's residential and commercial electric or natural gas customers nationwide whose contracts included variable pricing terms that set the customer's price by reference to an index and a Retail Service Charge (or its equivalent), (the "Class").

47.    Plaintiff also brings this action on his own behalf and, pursuant to Rule 23(b) and (c)(4), on behalf of a class of all of Constellation's residential and commercial electric or natural gas customers in New Jersey who Constellation charged a variable rate, from the earliest allowable date through the date of judgment (the "New Jersey Subclass").

48.    As alleged throughout this Complaint, the Class and New Jersey Subclass's (together, the "Class" unless otherwise specified) claims all derive directly from a single course of conduct by Defendant.  Defendant has engaged in uniform and standardized conduct toward the Class—its marketing and billing practices—and this case is about the responsibility of Defendant for its knowledge and conduct in breaching its contracts and deceiving its customers.  This conduct did not meaningfully differentiate among individual class members ("Class Members") in its degree of care or candor, its actions or inactions, or in its omissions.

49.    Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant.

50.    Plaintiff reserves the right, as might be necessary or appropriate, to modify or amend the definition of the Class and/or add additional Subclasses, when Plaintiff files his motion for class certification.

51.    Plaintiff does not know the exact size of the Class because such information is in the exclusive control of Constellation.  Plaintiff believes, however, that based on the publicly available data concerning Defendant's customers, the Class encompasses thousands of individuals whose identities can be readily ascertained from Defendant's records.  Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

52.    Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

  a.  Whether Defendant breached its contract with Plaintiff and Class Members by failing to set variable rates in the method dictated by the parties' contract;

  b.  Whether Defendant's conduct violates N.J.S.A. 56:8-1, *et seq.*;

  c.  Whether Defendant's conduct violates N.J.A.C. 14:4-7.3(d)(1) and 7.4(n)(1);

  d.  Whether Defendant's conduct violates N.J.S.A. 56:12-15, *et seq.*;

  e.  Whether Defendant's conduct violates multiple states' consumer protection statutes;

  f.  Whether Defendant was unjustly enriched as a result of its conduct;

  g.  Whether Defendant violated the duty of good faith and fair dealing in its consumer contracts;

  h.  Whether Class Members have been injured by Defendant's conduct;

      i.    Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices; and

      j.    The extent of class-wide injury and the measure of damages for those injuries.

53.     Plaintiff's claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiff and the other members of the Class were subject to the same or similar conduct engineered by Defendant. Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Defendant's conduct.

54.     Plaintiff is an adequate class representative. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff has retained competent and experienced class action attorneys to represent his interests and those of the Class.

55.     A class action is necessary because (i) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; and (ii) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendant's conduct.

56.     A class action is appropriate because Defendant has acted or refused to act on grounds generally applicable to all Class Members.

57.     A class action is superior to all other available methods for resolving this controversy because questions of law and fact common to the Class predominate over any

questions affecting only individual Class Members and a class action will fairly and efficiently adjudicate the controversy.

58.    Further, the following issues are also appropriately resolved on a class-wide basis:

a.    Whether Defendant breached its contract with Plaintiff and Class Members by failing to set variable rates in the method dictated by the parties' contract;

b.    Whether Defendant's conduct violates the New Jersey Consumer Fraud Act;

c.    Whether Defendant's conduct violates N.J.A.C. 14:4-7.3(d)(1) and 7.4(n)(1);

d.    Whether Defendant's conduct violates N.J.S.A. 56:12-15, *et seq.*;

e.    Whether Defendant's conduct violates multiple states' consumer protection statutes;

f.    Whether Defendant was unjustly enriched as a result of its conduct;

g.    Whether Defendant violated the duty of good faith and fair dealing in its consumer contracts;

h.    Whether Class Members have been injured by Defendant's conduct; and

i.    Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices.

59.    Accordingly, Defendant's violations of the law apply to all Class Members, and Plaintiff is entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

## CAUSES OF ACTION

### COUNT I
**Breach of Contract**
**(On Behalf of Plaintiff and All Class Members)**

60.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.    Many Constellation customers have customer agreements whose variable rate terms are identical or substantially similar in that they are based on a Usage Charge and a capped Retail Service Charge.

62.    Plaintiff and the class entered into valid contracts with Defendant for the provision of electricity and/or gas.

63.    Constellation uniformly represents to many residential and commercial customers in form customer agreements that its variable rates for gas and electricity would be based on a Usage Charge and a capped Retail Service Charge, or by reference to an index that is the same or equivalent to the index referenced in Plaintiff's contract with Constellation.

64.    Pursuant to the contracts, Plaintiff and the class paid the variable rates Defendant charged for electricity and/or gas.

65.    However, Defendant failed to perform its obligations under its contracts because it frequently charges variable rates that is higher than allowed under those contracts.

66.    On information and belief, Defendant regularly charged variable rates for natural gas that were in excess of rates allowed under the terms set forth in Defendant's customer agreements.

67.    Plaintiff and the class were damaged as a result because they were billed, and they paid, a charge for energy that was higher than allowed under the contract.

68.     By reason of the foregoing, Defendant is liable to Plaintiff and other Class Members for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## COUNT II
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and All Class Members)

69.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

70.     This Count is alleged in the alternative to Count I.

71.     Plaintiff and the class contracted with Defendant for the provision of electricity and/or gas supply.

72.     Every contract has an implied covenant of good faith and fair dealing in the performance and enforcement of the contract.  The implied covenant is an independent duty and may be breached even if there is no breach of the contract's express terms.

73.     Under the contract, to the extent Defendant had discretion to set its Retail Service Charge, it was obligated to exercise its discretion in good faith.  Defendant exercised its discretion in bad faith.  Specifically, for years Defendant has been receiving complaints from consumers regarding Constellation's high variable energy rates and complaining that those rates were not consistent with consumers' expectations.  Despite these many complaints, Defendant acted with a bad motive and continued to gouge consumers and small businesses.  Likewise, Defendant has known for years (i) that its variable energy rates are consistently higher than the rates the customer's existing utility charges, (ii) that customers paying Defendant's variable energy rates receive no material added benefit in exchange for paying energy rates that are higher than the local utility's rates, and (iii) that Defendant could, but failed to, adequately disclose the conditions that must be present for a

variable rate customer to save money compared to what the consumer's local utility would have charged. Despite this superior knowledge, Defendant acted with a bad motive and continued to gouge consumers and small businesses.

74.    Further, Defendant's violation of the New Jersey Marketing Regulations as described herein demonstrates that it has violated community standards of decency, fairness, and reasonableness.

75.    Defendant's failure to comply with the regulations is what permitted Constellation to charge Plaintiff higher rates, and Plaintiff experienced the adverse consequences in the performance of the parties' agreement.

76.    Similarly, Defendant's failure to disclose the material information (i) that its variable energy rates are consistently higher than the rates the customer's existing utility charges, (ii) that customers paying Defendant's variable energy rates receive no material added benefit in exchange for paying energy rates that are higher than the local utility's rates, and (iii) that Defendant could, but failed to, adequately disclose the conditions that must be present for a variable rate customer to save money compared to what the consumer's local utility would have charged is what permitted Constellation to overcharge Plaintiff and Plaintiff experienced the adverse consequences in the performance of the parties' agreement.

77.    Plaintiff reasonably expected that Constellation's variable energy rates would not regularly be higher than the utility's rates, which provide the same energy supply as Constellation. Without these reasonable expectations, Plaintiff and other Class Members would not have agreed to buy electricity or gas from Defendant. Indeed, for years, Defendant has been receiving complaints from consumers putting Constellation on notice that its variable energy rates were consistently higher than consumers' utility rates and were thus not consistent with consumers' expectations.

78.     Plaintiff also reasonably expected that Defendant would refrain from price gouging. Without these reasonable expectations, Plaintiff and other Class Members would not have agreed to buy electricity or gas from Defendant.  Defendant knew it was engaging in price gouging and nevertheless extracted unreasonable and excessive margins from its variable rate customers.  In fact, Defendant's margins for its fixed rate products were substantially lower than the margins for its variable rate products—even though Defendant incurred greater financial risk from fixed rate products.

79.     Defendant also had an obligation to set its margin in good faith at a commercially reasonable amount.  Instead, Defendant charged a margin that was so high, the rate no longer bore any resemblance to a rate actually based on Defendant's costs.

80.     Defendant breached the implied covenant of good faith and fair dealing by engaging in the conduct described above.

81.     As a result of Defendant's breaches, Constellation is liable to Plaintiff and members of the class for damages and attorneys' fees and expenses.

## **COUNT III**
### **Violation of the New Jersey Consumer Fraud Act**
### **(On Behalf of Plaintiff and the New Jersey Subclass)**

82.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.     The New Jersey Consumer Fraud Act prohibits, *inter alia*:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. 56:8-2.

84.     Defendant's affirmative misrepresentations and material omissions with respect to the rates charged for electricity and/or natural gas, as described above, constitute actionable statements and omissions in connection with the marketing, advertising, promotion, and sale of electricity and/or natural gas in violation of the New Jersey Consumer Fraud Act.

85.     Specifically, as detailed herein, Defendant made, and continues to make, the following material omissions, including:

a.  Failing to provide customers with a contract that discloses "the average price per kWh for electric generation service or the average price per therm for gas supply service being charged for basic generation service or basic gas supply service by the [relevant local utility] over the same period" as the contract's duration. N.J.A.C. 14:4-7.4(a)(4).

b.  Failing to provide customers with a contract that discloses "the estimated percentage savings on the total bill which" a fixed rate "customer will realize under the advertised price relative to the customer taking basic generation service or basic gas supply service from the [relevant local utility]." N.J.A.C. 14:4-7.4(b)(1).

c.  Failing to provide "a detailed customer bill comparison" as required by N.J.A.C. 14:4-7.4(b)(2).

d.  Failing to provide a contract that points potential customers to a telephone number or website "which a customer may access to request detailed information concerning the average price per kWh for electric generation service or average price per therm for gas supply service over the term of a contract for the service being offered, exclusive of any charges for any optional services." N.J.A.C. 14:4-7.4(a)(1).

86.     The information Defendant concealed would have been material to any consumer deciding whether to purchase electricity and/or natural gas from Defendant.

87.     Defendant also engaged in unlawful misrepresentations. Defendant's misrepresentations and false, deceptive, and misleading statements with respect to the rates charged for electricity and/or natural gas, as described above, constitute affirmative

misrepresentations in connection with the marketing, advertising, promotion, and sale of electricity and/or natural gas in violation of the New Jersey Consumer Fraud Act.  During the rescission period, Defendant's contract serves as a solicitation because consumers may "cancel" the agreement before it becomes legally binding.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents, *inter alia*, that its variable rate would be based on the Real Time Locational Based Marginal Price plus a capped Retail Service Charge.  Specifically, as detailed herein, Defendant made, and continues to make, affirmative misrepresentations, including:

   a. Providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts when it is not.

   b. Providing a materially misleading contract that fails to state "the average price per kWh for electric generation service or the average price per therm for gas supply service being charged for basic generation service or basic gas supply service by the [relevant local utility] over the same period" as the contract's duration.  N.J.A.C. 14:4-7.4(a)(4).

   c. Providing a materially misleading contract that fails to state "the estimated percentage savings on the total bill which" a fixed rate "customer will realize under the advertised price relative to the customer taking basic generation service or basic gas supply service from the [relevant local utility]."  N.J.A.C. 14:4-7.4(b)(1).

   d. Providing a materially misleading contract and failing to provide a detailed customer bill comparison as required by N.J.A.C. 14:4-7.4(b)(1).

   e. Providing a materially misleading contract that fails to point potential customers to a telephone number or website "which a customer may access to request detailed information concerning the average price per kWh for electric generation service or average price per therm for gas supply service over the term of a contract for the service being offered, exclusive of any charges for any optional services."  N.J.A.C. 14:4-7.4(a)(1).

88.   Defendant also acted unconscionably by charging a price for a commodity that was

higher than the rate charged by the local utility, which is Constellation's main competitor. Indeed, for the six billing periods preceding Plaintiff's cancellation of his Constellation account, Constellation's rate was higher than JCP&L's rate (Plaintiff's local utility) every single month. For two of those billing periods, Constellation's rate was almost double JCP&L's rate. Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to purchase electricity and/or natural gas from Defendant.

89.     Defendant's misrepresentations and omissions were outside the norm of reasonable business practices, unconscionable, and constitute substantial aggravating circumstances under the New Jersey Consumer Fraud Act. Specifically, Defendant set its variable energy rates in bad faith and in a manner that was unfair to its customers, who lack the information necessary to determine whether Defendant set its variable energy rates in good faith. Moreover, Defendant has long had knowledge that it customers do not understand how Defendant sets it rates, yet Constellation exploited its information advantage over its customers and assessed rates than were higher than what reasonable business practices dictate. In addition, Defendant (who has long been represented by experienced counsel) knew full well that its marketing violated New Jersey regulations and laws specifically designed to protect the consumers it exploits. Defendant thus intentionally omitted the required variable rate disclosures in bad faith and in contravention of acceptable norms of business conduct, which aggravates its bad faith decision to not ensure that its variable rates are set based on the method identified in its contracts. Had Constellation not committed the misrepresentations and omissions detailed herein, Plaintiff and New Jersey Subclass Members would not have agreed to accept Constellation's gas and electric services.

90.     Defendant made these false, deceptive, and misleading statements and omissions with the intent that its customers rely upon such statements.

91.     Plaintiff and the other members of the New Jersey Subclass entered into agreements to purchase electricity and/or natural gas from Defendant and suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of the New Jersey Consumer Fraud Act.

92.     As a consequence of Defendant's wrongful actions, Plaintiff and the other members of the New Jersey Subclass suffered an ascertainable monetary loss, including but not limited to the difference between the price Plaintiff and Class Members paid and the price they would have paid had Defendant set the variable rate consistent with its contract and/or the utility's rate, and damages consistent with statutory penalties.

93.     Plaintiff and other members of the New Jersey Subclass suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have entered into an agreement to purchase energy from Defendant if the true facts concerning its rates had been known.

94.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the New Jersey Subclass for trebled compensatory damages, punitive damages, attorneys' fees, and the costs of this suit.  N.J.S.A. 56:8-2.11, 8-2.12, 8-19.

95.     Defendant knows full well that it charges variable rates that are inconsistent with the formula set forth in its contracts and that its rates are higher than the rates charged by customers' local utilities.  The misrepresentations and omissions it makes with regard to its rates were made to induce customers to purchase energy from Constellation so it can reap outrageous profits to the direct detriment of its New Jersey customers and without regard to the consequences high utility bills cause such consumers.  Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to the well-

being of Plaintiff and the other members of the New Jersey Subclass.  Defendant is therefore

additionally liable for punitive damages, in an amount to be determined at trial.

<u>COUNT IV</u>
**Violation of the Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA")**
**(On Behalf of Plaintiff and the New Jersey Subclass)**

96.    Plaintiff realleges and incorporates by reference each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

97.    The TCCWNA states:

No seller, lessor, creditor, lender or bailee shall in the course of his business
offer to any consumer or prospective consumer or enter into any written
consumer contract or give or display any written consumer warranty, notice
or sign after the effective date of this act which includes any provision that
violates any clearly established legal right of a consumer or responsibility
of a seller, lessor, creditor, lender or bailee as established by State or Federal
law at the time the offer is made or the consumer contract is signed or the
warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15.

98.    Plaintiff and New Jersey subclass Members are "consumers" within the meaning

of N.J.S.A. 56:12-15.

99.    Defendant is a "seller" within the meaning of N.J.S.A. 56:12-15.

100.    Defendant violated the TCCWNA by inducing Plaintiff and New Jersey Subclass

Members to switch their energy supplier to Defendant using contract terms that violate the CFA

by making misrepresentations and false, deceptive, and misleading statements and material

omissions with respect to the rates charged for electricity and/or natural gas, as described above,

in connection with the marketing, advertising, promotion, and sale of electricity and/or natural gas.

N.J.S.A. 56:8-2.

101.    Defendant violated Plaintiff's and New Jersey Subclass Members' legal rights

under the CFA and therefore, Defendant violated the TCCWNA.

102.    In addition, Defendant violated the TCCWNA each time it violated the Marketing Regulation.  As described above, Defendant violated the Marketing Regulation, and thus the TCCWNA, by:

   a.    Failing to provide customers with a contract that discloses "the average price per kWh for electric generation service or the average price per therm for gas supply service being charged for basic generation service or basic gas supply service by the [relevant local utility] over the same period" as the contract's duration.  N.J.A.C. 14:4-7.4(a)(4).

   b.    Failing to provide customers with a contract that discloses "the estimated percentage savings on the total bill which" a fixed rate "customer will realize under the advertised price relative to the customer taking basic generation service or basic gas supply service from the [relevant local utility]."  N.J.A.C. 14:4-7.4(b)(1).

   c.    Failing to provide "a detailed customer bill comparison" as required by N.J.A.C. 14:4-7.4(b)(2).

   d.    Failing to provide a contract that points potential customers to a telephone number or website "which a customer may access to request detailed information concerning the average price per kWh for electric generation service or average price per therm for gas supply service over the term of a contract for the service being offered, exclusive of any charges for any optional services."  N.J.A.C. 14:4-7.4(a)(1).

103.    Defendant violated Plaintiff's and New Jersey Subclass Members' legal rights under the Marketing Regulation and therefore, Defendant violated the TCCWNA.

104.    As a result of Defendant's violations of the TCCWNA, Plaintiff and New Jersey Subclass Members are entitled to statutory damages of not less than $100 for each of Defendant's TCCWNA violations.  N.J.S.A. 56:12-17.

105.    Defendant's violations of the Marketing Regulations, and thus the TCCWNA, continue to cause Plaintiff harm.  Every time Defendant charged a variable rate under the false

guise and auspices of a marketing that violates the Marketing Regulations, violations about which Plaintiff was unaware, he was injured anew.

<div align="center">

**COUNT V**
**Violation Of Materially Identical State Consumer Protection Statutes**
**(On Behalf of Plaintiff and the Class)**

</div>

106.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

107.    Pursuant to the materially identical consumer protection statutes of Connecticut, Delaware, Georgia, Illinois, Kentucky, Maryland, Michigan, Nebraska, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Virginia, Washington, D.C., and Wyoming, consumers are protected against deceptive and unfair acts or practices, misrepresentations, or omissions which affect business, trade, or commerce.

<div align="center">

**Connecticut Unfair Trade Practices Act**

</div>

108.    The Connecticut Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110(b)(a).

109.    Defendant's marketing and sales practices are consumer-oriented in that they are directed at members of the consuming public.

110.    Defendant participated in unfair or deceptive trade practices that violated the Connecticut Unfair Trade Practices Act, as described below and alleged throughout this Complaint, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

111.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Connecticut Unfair Trade Practices Act, which aims to protect consumers.

<div align="center">

27

</div>

112.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method set forth in the contract.

113.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

114.    Defendant knew or should have known that its conduct violated the Connecticut Unfair Trade Practices Act.

115.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

116.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates would be calculated using the method set forth in its customers' contracts.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

117.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

118.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Class Members in Connecticut remained with Constellation and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Connecticut for actual

damages, punitive damages, equitable relief, and attorneys' fees and costs.  Conn. Gen. Stat. § 42-110g(a), (d).

119.    Plaintiff and Class Members in Connecticut further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Connecticut all amounts wrongfully assessed and/or collected.

120.    A copy of this complaint is being mailed to the Connecticut Attorney General and the Connecticut Commissioner of Consumer Protection.  Conn. Gen. Stat. § 42-110g(d).

### Delaware Consumer Fraud Act

121.    The Delaware Consumer Fraud Act prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise."  Del. Code Ann. § 2513.

122.    Defendant participated in unfair or deceptive trade practices that violated the Delaware Consumer Fraud Act, as described below and alleged throughout this Complaint, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

123.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Delaware Consumer Fraud Act, which aims to protect consumers.

124.     Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method set forth in the contract.

125.     Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

126.     Defendant knew or should have known that its conduct violated the Delaware Consumer Fraud Act.

127.     Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

128.     Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method set forth in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

129.     Defendant's practices are unconscionable and outside the norm of reasonable business practices.

130.     As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Delaware remained with Constellation and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised. By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Delaware for all damages sustained.  Del. Code Ann. § 2525.

131.    Plaintiff and Class Members in Delaware further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Delaware all amounts wrongfully assessed and/or collected.

### Georgia Fair Business Practices Act

132.    The Georgia Fair Business Practices Act prohibits "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices."  Ga. Code § 10-1-393(a).

133.    Defendant participated in unfair or deceptive trade practices that violated the Georgia Fair Business Practices Act, as described below and alleged throughout this Complaint, by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

134.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Georgia Fair Business Practices Act, which aims to protect consumers.

135.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

136.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

137.    Defendant knew or should have known that its conduct violated the Georgia Fair Business Practices Act.

138.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

139.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

140.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

141.    Defendant's violations present a continuing risk to Plaintiff and Class Members in Georgia, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

142.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Georgia remained with Constellation and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised. By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Georgia for actual damages, exemplary damages, equitable relief, and attorneys' fees and costs.  Ga. Code. § 10-1-399.

143.    Plaintiff and Class Members in Georgia further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in

any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Georgia all amounts wrongfully assessed and/or collected.

144.    Defendant does not maintain a place of business or keep assets in the state of Georgia thus obviating the need for any pre-suit notice.

### Illinois Consumer Fraud And Deceptive Trade Practices Act

145.    Defendant engaged in unlawful, unfair, and deceptive acts and practices, with respect to the sale and advertisement of the products purchased by Plaintiff and Class Members in Illinois, in violation of 815 ILCS § 505/2, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

146.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.

147.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members in Illinois.

148.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

149.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

150.    Defendant knew or should have known that its conduct violated the Illinois Consumer Fraud And Deceptive Trade Practices Act.

151.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

152.    Plaintiff and Class Members in Illinois would not have enrolled with Defendant had they known the truth about Defendant's variable rate pricing.

153.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

154.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

155.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

156.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Class Members in Illinois suffered an ascertainable loss of money or property, real or personal, as described above.

157.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Illinois remained with Constellation and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.

## Kentucky Consumer Protection Act

158.    The Kentucky Consumer Protection Act was passed after its legislature found that "the public health, welfare and interest require a strong and effective consumer protection program to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services" and declared unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

159.    Defendant engaged in unfair, false, misleading, or deceptive acts or practices, with respect to the sale and advertisement of the services purchased by Plaintiff and Class Members in Kentucky, in violation of Ky. Rev. Stat. Ann. § 367.170, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

160.    The above unfair, false, misleading, or deceptive acts or practices by Defendant were conducted in "trade" or "commerce," as defined by Ky. Rev. Stat. Ann. § 367.110(2).

161.    The above unfair, false, misleading, or deceptive acts or practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

162.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members in Kentucky.

163.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

164.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

165.    Plaintiff and Class Members in Kentucky relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of Defendant's services had they known the truth about Defendant's variable rate pricing.

166.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

167.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

168.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

169.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Kentucky remained with Constellation and suffered and continue to suffer an ascertainable loss of money or property, real or personal, based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Kentucky for relief, including, but not limited to, injunctive relief, damages, and attorneys' fees and costs.  Ky. Rev. Stat. Ann. § 367.220

170.    Plaintiff and Class Members in Kentucky further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in

any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Kentucky all amounts wrongfully assessed and/or collected.

### Maryland Consumer Protection Act

171.    Under the Maryland Consumer Protection Act, "[a] person may not engage in any unfair, abusive, or deceptive trade practice" in the sale of any consumer services.  Md. Code Ann., Com. Law § 13-303(1).

172.    Under the Maryland Consumer Protection Act, unfair, abusive, or deceptive trade practices include, among other things, representations that consumer services "have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have" or "are of a particular standard, quality, grade, style, or model which they are not"; "[f]ailure to state a material fact if the failure deceives or tends to deceive; or "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with…[t]he promotion or sale of any . . . consumer services."  Md. Code Ann., Com. Law § 13-301.

173.    Defendant engaged in unfair, abusive, or deceptive trade practices with respect to the sale and advertisement of the services purchased by Plaintiff and Class Members in Maryland, in violation of Md. Code Ann., Com. Law §§ 13-101, *et seq*., including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

174.    The above unfair, abusive, or deceptive trade practices by Defendant were conducted in connection with the sale of "consumer services," as defined by Md. Code Ann., Com. Law § 13-101(d)(1).

175.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Maryland Consumer Protection Act, which aims to protect consumers.

176.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

177.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

178.    Plaintiff and Class Members in Maryland relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of Defendant's services had they known the truth about Defendant's variable rate pricing.

179.    Defendant knew or should have known that its conduct violated the Maryland Consumer Protection Act.

180.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

181.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

182.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

183.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Maryland remained with Constellation and suffered and continue to suffer an ascertainable loss of, real or personal, based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Maryland for relief, including, but not limited to, compensatory damages, and attorneys' fees and costs.  Md. Code Ann., Com. Law § 13-408.

184.    Plaintiff and the members of the Class in Maryland further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Maryland all amounts wrongfully assessed and/or collected.

## Michigan Consumer Protection Act

185.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.…" Mich. Comp. Laws § 445.903(1).  Defendant engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have… characteristics… that they do not have.…;" "(e) Representing that goods or services are of a particular standard… if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the

represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

186.    Defendant engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, with respect to the sale and advertisement of the services purchased by Plaintiff and the Class Members in Michigan, in violation of Mich. Comp. Laws § 445.903, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

187.    The above unfair methods of competition and unfair or deceptive acts or practices by Defendant were conducted in "[t]rade or commerce," as defined by Mich. Comp. Laws § 445.902(1)(g).

188.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Michigan CPA, which aims to protect consumers.

189.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

190.    The above unfair and deceptive practices and acts by Defendant were material misrepresentations of a presently existing or past fact.

191.    The representations by Defendant regarding the quality of the services was false.

192.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

193.    Defendant knew or should have known that its conduct violated the Michigan Consumer Protection Act.

194.    Defendant intended that persons rely on the above misrepresentation regarding the quality of the services.

195.    Plaintiff and the Class Members in Michigan acted in reliance on Defendant's representations.

196.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

197.    Plaintiff and the Class Members in Michigan relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of Defendant's services had they known the truth Defendant's variable rate pricing.

198.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

199.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.

200.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the Class Members in Michigan.

201.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and the Class Members in Michigan remained with Constellation and suffered

and continue to suffer an ascertainable loss of money or property, real or personal, based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised. By reason of the foregoing, Defendant is liable to Plaintiff and the Class Members in Michigan for relief, including, but not limited to, injunctive relief, damages, and attorneys' fees and costs. Mich. Comp. Laws § 445.911.

202.    Plaintiff and the members of the Class in Michigan further seek equitable relief against Defendant. This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and the Class Members in Michigan all amounts wrongfully assessed and/or collected.

### Nebraska Consumer Protection Act

203.    The Nebraska Consumer Protection Act makes it unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602.

204.    Defendant engaged in unlawful methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, with respect to the sale and advertisement of the services purchased by Plaintiff and Class Members in Nebraska, in violation of Neb. Rev. Stat. § 59-1602, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

205.    The above unfair or deceptive acts or practices by Defendant were conducted in "trade" or "commerce."

206.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.

207.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members in Nebraska.

208.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Nebraska Consumer Protection Act, which aims to protect consumers.

209.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

210.    Plaintiff and Class Members in Nebraska relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of Defendant's services had they known the truth about Defendant's variable rate pricing.

211.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

212.    Defendant knew or should have known that its conduct violated the Nebraska Consumer Protection Act.

213.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

214.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method

specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

215.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

216.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Nebraska remained with Constellation and suffered and continue to suffer an ascertainable loss of money or property, real or personal, based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Nebraska for relief, including, but not limited to, injunctive relief, damages, and attorneys' fees and costs.  Neb. Rev. Stat. § 59-16-0.

217.    Plaintiff and the members of the Class in Nebraska further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Nebraska all amounts wrongfully assessed and/or collected.

## New Hampshire Consumer Protection Act

218.    The New Hampshire Consumer Protection Act makes it unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." N.H. Rev. Stat. Ann. § 358-A:2.

219.    Defendant engaged in unlawful methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, with respect to the sale and advertisement of the services purchased by Plaintiff and Class Members in New Hampshire, in violation of N.H. Rev.

Stat. Ann. § 358-A:2, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

220.    The above unfair or deceptive acts or practices by Defendant were conducted in "trade" or "commerce."

221.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.

222.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members in New Hampshire.

223.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the New Hampshire Consumer Protection Act, which aims to protect consumers.

224.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

225.    Plaintiff and Class Members in New Hampshire relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of Defendant's services had they known the truth about Defendant's variable rate pricing

226.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

227.    Defendant knew or should have known that its conduct violated the New Hampshire Consumer Protection Act.

228.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

229.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

230.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

231.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and the Class Members in New Hampshire remained with Constellation and suffered and continue to suffer an ascertainable loss of money or property, real or personal, based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in New Hampshire for relief including, but not limited to, injunctive relief, damages, treble damages, and attorneys' fees and costs.  N.H. Rev. Stat. Ann. § 358-A:10

232.    Plaintiff and the members of the Class in New Hampshire further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in New Hampshire all amounts wrongfully assessed and/or collected.

233.    A copy of this complaint is being sent to the New Hampshire Attorney General.

**New York General Business Law § 349**

234.    New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law §349.

235.    Defendants' marketing and billing practices are consumer-oriented in that they are directed at members of the consuming public.

236.    By engineering and implementing fraudulent billing and advertising practices, Defendant engaged in, and continue to engage in, deceptive acts and practices in violation of N.Y. Gen. Bus. Law §349.

237.    Defendant have violated N.Y. Gen. Bus. Law §349 statute, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

238.    The aforementioned acts are unfair, unconscionable and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

239.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation. The agreement is not legally binding prior to the expiration of the rescission period. Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

240.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

241.    Defendant knew or should have known that its conduct violated New York General Business Law § 349.

242.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

243.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

244.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

245.    As a direct and proximate result of Defendants' unlawful and deceptive marketing and billing practices, Plaintiff and Class Members in New York has suffered injury and monetary damages in an amount to be determined at the trial of this action and upon information and belief, believed to exceed $100 million, based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in New York for trebled compensatory damages, attorneys' fees, and the costs of this suit.

246.    Plaintiff and the members of the Class in New York further seek equitable relief against Defendants.  Pursuant to N.Y. Gen. Bus. Law § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendants' practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to refund to Plaintiff and Class Members in New York all fees wrongfully assessed and/or collected.

**Ohio Consumer Sales Practices Act**

247.    The Ohio Consumer Sales Practices Act (the "Ohio CSPA"), OHIO REV. CODE §

1345.01, *et seq.*, broadly prohibits unfair or deceptive acts or practices in connection with a

consumer transaction.

248.    Defendant are a "[s]upplier[s]" as that term is defined in OHIO REV. CODE §

1345.01(C).

249.    Plaintiff and Class Members in Ohio are "[c]onsumer[s]" as defined in OHIO REV.

CODE § 1345.01(D), and the transactions with Defendant being complained of herein are

"[c]onsumer transaction[s]" within the meaning of OHIO REV. CODE § 1345.01(A).

250.    The Ohio CSPA declares: "No supplier shall commit an unfair or deceptive act or

practice in connection with a consumer transaction.  Such an unfair or deceptive act or practice by

a supplier violates this section whether it occurs before, during, or after the transaction."  OHIO

REV. CODE § 1345.02(A).

251.    The Ohio CSPA also prohibits suppliers from, *inter alia*, representing "(4) That the

subject of a consumer transaction is available to the consumer for a reason that does not exist;"

"(5) That the subject of a consumer transaction has been supplied in accordance with a previous

representation, if it has not . . . ."  OHIO REV. CODE § 1345.02(B).

252.    The Ohio CSPA also prohibits suppliers from "commit[ting] an unconscionable act

or practice in connection with a consumer transaction . . . whether it occurs before, during, or after

the transaction."  OHIO REV. CODE § 1345.03(A).  Included among circumstances used to

determine whether an act or practice is unconscionable is "[w]hether the supplier required the

consumer to enter into a consumer transaction on terms the supplier knew were substantially one-

sided in favor of the supplier," [w]hether the supplier knew at the time the consumer transaction

was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction," and "[w]hether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment,"

253.    Defendant violated the Ohio CSPA, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

254.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Ohio CSPA, which aims to protect consumers.

255.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

256.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

257.    Defendant knew or should have known that its conduct violated the Ohio CSPA.

258.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

259.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

260.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

261.    10.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Ohio remained with Constellation and suffered and continue to suffer an ascertainable loss of monies, to be proven at trial, based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Ohio for relief, including, but not limited to, treble damages, and reasonable attorneys' fees. OHIO REV. CODE § 1345.09.

262.    Plaintiff and the members of the Class in Ohio further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Ohio all amounts wrongfully assessed and/or collected.

**Pennsylvania Unfair Trade Practices And Consumer Protection Law**

263.    Plaintiff and Class Members in Pennsylvania signed up for Defendant's services primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

264.    All of the acts complained of herein were perpetrated by Defendant in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

265.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including, "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  73 P.S. § 201-2(4).

266.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Pennsylvania CPL, which aims to protect consumers.

267.    Defendant participated in unfair or deceptive trade practices that violated the Pennsylvania CPL as described below and alleged throughout this Complaint, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

268.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to each state's public policy, which aims to protect consumers.

269.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

270.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

271.    Defendant knew or should have known that its conduct violated the Pennsylvania CPL.

272.    Had Plaintiff and Class Members in Pennsylvania known the truth about Defendant's trial period, they would not have tried Defendant.  Plaintiff and Class Members in Pennsylvania did not receive the benefit of their bargain as a result of Defendant's misconduct.

273.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

274.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

275.    Plaintiff and the Class Members in Pennsylvania suffered injury in fact to a legally protected interest.  As a result of Defendant's conduct, Plaintiff and the Class Members in Pennsylvania were harmed and suffered actual damages.

276.    Defendant's violations present a continuing risk to Plaintiff and the Class Members in Pennsylvania, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

277.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and the Class Members in Pennsylvania remained with Constellation and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Pennsylvania for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.  73 P.S. § 201-9.2(a).  Plaintiff and Class Members in Pennsylvania are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

278.    Plaintiff and the members of the Class in Pennsylvania further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging

in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Pennsylvania all amounts wrongfully assessed and/or collected.

### Rhode Island Unfair Trade Practice And Consumer Protection Act

279.    The Rhode Island Unfair Trade Practice and Consumer Protection Act ("Rhode Island Act") identifies several types of "unfair" and/or "deceptive trade practices, but also incorporates by reference "the Federal Trade Commission's and federal courts' interpretations of section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1)," rather than setting forth specific definitions of those operative terms.  R.I. Gen. Laws § 6-13.1-2.

280.    Rhode Island has adopted a three-part test to determine whether an act is "deceptive": (1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3), the representation, omission, or practice is material," meaning the representation is important to the consumer and likely to affect their decisions with respect to the product.

281.    Defendant engaged in unlawful, unfair, and deceptive acts and practices, with respect to the sale and advertisement of the services purchased by Plaintiff and Class Members in Rhode Island, in violation of R.I. Gen. Laws §§ 6-13.1-1, *et seq*., including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

282.    The above unfair methods of competition and unfair or deceptive acts or practices by Defendant were conducted in "[t]rade" and/or "commerce," as defined by R.I. Gen. Laws § 6-13.1-1(5).

283.    The above unfair methods of competition and unfair or deceptive acts or practices by Defendant were immoral, unethical, oppressive, and unscrupulous.

284.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members in Rhode Island.

285.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Rhode Island Act, which aims to protect consumers.

286.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

287.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

288.    Defendant knew or should have known that its conduct violated the Rhode Island Act.

289.    Defendant's actions were material to Plaintiff and Class Members in Rhode Island, who relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of Defendant's services had they known the truth about Defendant's variable rate pricing.

290.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

291.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method

specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

292.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

293.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Rhode Island remained with Constellation and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised. By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Rhode Island for relief  including, but not limited to, injunctive relief, restitution, statutory damages, compensatory damages, punitive damages, and attorneys' fees and costs.  R.I. Gen. Laws §§ 6-13.1-5.2.

294.    Plaintiff and the members of the Class in Rhode Island further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Rhode Island all amounts wrongfully assessed and/or collected.

295.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Class Members in Rhode Island suffered an ascertainable loss of money or property, real or personal, as described above.

### Virginia Consumer Protection Act

296.    The Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq.* ("VCPA") was enacted to "promote fair and ethical standards of dealings between suppliers and the consuming public."

297.    The VCPA makes unlawful, among other things, any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200.

298.    Defendant engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, with respect to the sale and advertisement of the services purchased by Plaintiff and Class Members in Virginia, in violation of Va. Code Ann. §§ 59.1-196, including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

299.    The above unfair or deceptive acts or practices by Defendant were conducted as part of a "consumer transaction" as defined by Va. Code Ann. § 59.1-198.

300.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the VCPA, which aims to protect consumers.

301.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation. The agreement is not legally binding prior to the expiration of the rescission period. Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

302.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

303.    Defendant knew or should have known that its conduct violated the VCPA.

304.    The above unfair or deceptive acts or practices by Defendant were reasonably calculated to deceive class members and other consumers and made with intent to deceive.

305.    The above unfair or deceptive acts or practices by Defendant did in fact deceive class members and other consumers, causing them damage.

306.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

307.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

308.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

309.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.

310.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members in Virginia.

311.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Virginia remained with Constellation and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised. By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Virginia for relief including, but not limited to, injunctive relief, compensatory damages, statutory damages, treble damages, civil penalties and attorneys' fees and costs.  Va. Code Ann. §§ 59.1-196, *et seq*.

312.    Plaintiff and the members of the Class in Virginia further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an

order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Virginia all amounts wrongfully assessed and/or collected.

### District Of Columbia Consumer Protection Procedures Act

313.    The purpose of the District of Columbia Consumer Protection Procedures Act (the "DC CPPA") is to "assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices," to "promote, through effective enforcement, fair business practices throughout the community," and to "educate consumers to demand high standards and seek proper redress of grievances."  D.C. CODE §§ 28- 3901(b)(1)-(3).  The DC CPPA's provisions are to be "construed and applied liberally to promote its purpose."  D.C. CODE § 28-3901(c).

314.    The DC CPPA prohibits "unfair or deceptive trade practice[s]," including: "(a) represent[ing] that goods or services have . . . characteristics, . . . uses, benefits or quantities that they do not have;" "(d) represent[ing] that goods or services are of a particular standard, quality or grade . . . if they are of another;" "(e) misrepresent[ing] as to a material fact which has a tendency to mislead;" "(f) fail[ing] to state a material fact if such failure tends to mislead;" "(f-1) us[ing] innuendo or ambiguity as to a material fact, which has a tendency to mislead;" "(h) advertis[ing] or offer[ing] goods or services . . . without the intent to sell them as advertised;" "(i) advertis[ing] or offer[ing] goods or services without supplying reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition which has no tendency to mislead;" and "(q) fail[ing] to supply to a consumer a copy of a sales or service contract . . . [.]"  D.C. CODE § 28-3904.  These are considered violations "whether or not any consumer is in fact misled, deceived, or damaged thereby."  D.C. CODE § 28-3904.

315.    The services offered by Defendant to Plaintiff and the Washington, D.C. Class were and are for personal, household, or family purposes within the meaning of D.C. CODE § 28-3905(k)(1)(B).

316.    Defendant violated the DC CPPA by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

317.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the DC CPPA, which aims to protect consumers.

318.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

319.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

320.    Defendant knew or should have known that its conduct violated the DC CPPA.

321.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

322.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

323.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

324.    Defendant's violations present a continuing risk to Plaintiff and the Class Members in the District of Columbia, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

325.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in the District of Columbia remained with Constellation and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in the District of Columbia for treble their actual damages or $1,500 per violation, whichever is greater, as well as attorneys' fees.  D.C. CODE § 28-3905(k)(2)(A)-(B).  Plaintiff and Class Members in the District of Columbia are also entitled to an award of punitive damages under D.C. CODE § 28-3905(k)(2)(C) and any other relief which the Court determines proper under D.C. CODE § 28-3905(k)(2)(F).  Plaintiff and Class Members in the District of Columbia are also entitled to equitable relief against Defendant pursuant to D.C. CODE § 28-3905(k)(2)(D).

326.    Plaintiff and the members of the Class in the District of Columbia further seek equitable relief against Defendant.  This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in the District of Columbia all amounts wrongfully assessed and/or collected.

**Wyoming Consumer Protection Act**

327.    The Wyoming Consumer Protection Act makes it unlawful to "engage[] in a deceptive trade practice . . . in the course of his business and in connection with a consumer transaction," which includes knowingly "[r]epresent[ing] that merchandise is of a particular standard, grade, style or model, if it is not." Wyo. Stat. Ann. § 40-12-105.

328.    Defendant engaged in unlawful deceptive trade practices and acts with respect to the sale and advertisement of the services purchased by Plaintiff and Class Members in Wyoming, in violation of  Wyo. Stat. Ann. §§ 40-12-101, *et seq*., including by providing a materially misleading contract that misrepresents that customers' rates would be calculated using the method set forth in its customers' contracts, when Defendant knew that the variable rates were in fact not based on this method.

329.    The above deceptive acts or practices by Defendant were conducted in connection with a "consumer transaction," as defined by Wyo. Stat. Ann. § 40-12-102(ii).

330.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to the Wyoming Consumer Protection Act, which aims to protect consumers.

331.    Defendant first made this misrepresentation prior to the conclusion of the rescission period of the contract, during which Defendant's contract served as a solicitation.  The agreement is not legally binding prior to the expiration of the rescission period.  Thus, the contract is an advertisement in which Defendant misrepresents that the variable energy rates will be based upon the method identified in the contract.

332.    The above deceptive trade practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous.

333.    Defendant's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members in Wyoming.

334.    Plaintiff and Class Members in Wyoming relied on Defendant's representations in that they would not have purchased, chosen, and/or paid for all or part of Defendant's services had they known the truth about Defendant's variable rate pricing.

335.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to continue to purchase energy from Constellation.

336.    Defendant knew or should have known that its conduct violated the Wyoming Consumer Protection Act.

337.    Defendant knew at the time it signed up Plaintiff and prospective customers that the price of a customer's energy supply was a material factor in choosing Constellation.

338.    Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with the method specified in the contract.  By concealing its actual pricing strategy, Defendant deprives consumers of the ability to make informed purchasing decisions.

339.    Defendant's practices are unconscionable and outside the norm of reasonable business practices.

340.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members in Wyoming remained with Constellation and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate as promised.  By reason of the foregoing, Defendant is liable to Plaintiff and Class Members in Wyoming for

relief including, but not limited to, injunctive relief, compensatory damages, punitive damages, statutory damages, civil penalties and attorneys' fees and costs. Wyo. Stat. Ann. § 40-12-108.

341.    Plaintiff and the members of the Class in Wyoming further seek equitable relief against Defendant. This Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to return to Plaintiff and Class Members in Wyoming all amounts wrongfully assessed and/or collected.

342.    Plaintiff and Class Members in Wyoming have put Defendant on notice prior to filing suit pursuant to Wyo. Stat. Ann. §§ 40-12-109 and 40-12-102(a)(ix).

<div align="center">

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and All Class Members)**

</div>

343.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

344.    This Count is alleged in the alternative to Counts I and II. To the extent the Court determines that a valid contract exists between the parties, Plaintiff does not intend to proceed with his unjust enrichment claim.

345.    Plaintiff and the Class Members conferred a tangible economic benefit upon Defendant by contracting with Defendant for electricity or gas. Plaintiff and the Class would not have contracted with Defendant for electricity and gas had they known that Defendant would abuse its discretion and the information asymmetry to charge rates in excess of competing rates available on the market.

346.    Plaintiff and the Class Members would not have purchased energy from Defendant had they known the truth about Defendant's variable energy rates.

347.    By engaging in the conduct described above, Defendant has unjustly enriched itself and received a benefit beyond what was contemplated by the parties at the expense of Plaintiff and Class Members.

348.    It would be unjust and inequitable for Defendant to retain the payments Plaintiff and Class Members made for excessive energy charges.

349.    Therefore, Defendant is liable to Plaintiff and Class Members for the damages that they have suffered as a result of Defendant's actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)    Issue an order certifying the Class defined above, appointing the Plaintiff as Class Representative, and designating the undersigned firms as Class Counsel;

(b)    Find and declare that Defendant Constellation has committed the violations of law alleged herein;

(c)    Render an award of compensatory and statutory damages, the precise amount of which is to be determined at trial;

(d)    Issue an injunction or other appropriate equitable relief requiring Defendant to refrain from engaging in the deceptive practices alleged herein;

(e)    Render an award of punitive damages;

(f)    Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(g)    Grant all such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands that a jury determine any issue triable of right.

## NOTICE TO ATTORNEY GENERAL AND OTHER GOVERNMENT OFFICIALS

A copy of this Complaint will be electronically mailed to the Attorney General of

the State of New Jersey within twenty-four hours of its filing, pursuant to N.J.S.A. 56:8-20.

A copy of this Complaint will be mailed to both the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection within ten days of its filing, pursuant to Conn. Gen. Stat. § 42-110g(c).

A copy of this Complaint will be mailed, by either certified or registered mail or statutory overnight delivery, to the Attorney General of the State of Georgia within twenty days of its filing, pursuant to Ga. Code Ann. § 10-1-399(g).

A copy of this Complaint will be mailed to the Attorney General of the State of Illinois within ten days of its filing, pursuant to 815 ILCS 505/10a(d).

A copy of this Complaint will be mailed to the Attorney General of the State of Kentucky within ten days of its filing, pursuant to Ky. Rev. Stat. § 367.220(2).

A copy of this Complaint will be mailed to the Attorney General of the State of Nebraska within seven days of its filing, pursuant to Neb. Rev. Stat. Ann. § 87-303.12(1).

Dated: April 5, 2024
New York, New York

**WITTELS MCINTURFF PALIKOVIC**

By: *s/ Jessica L. Hunter*
Jessica L. Hunter (ID No. 282432018)
J. Burkett McInturff*
**WITTELS MCINTURFF PALIKOVIC**
305 Broadway, 7th Floor
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
jlh@wittelslaw.com
jbm@wittelslaw.com

*(Additional counsel overleaf)*

D. Greg Blankinship*
Erin Kelley*
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
WHITE PLAINS, NEW YORK 10601
Telephone: (914) 298-3281
gblankinship@fbfglaw.com
ekelley@fbfglaw.com

*Attorneys for Plaintiff and the Proposed Class*

*\* Admitted Pro Hac Vice*